Edward **HAVEN**, etc., et al., Plaintiffs,

v.

**RZECZPOSPOLITA POLSKA (REPUBLIC OF POLAND),** et al., Defendants.

No. 99 C 1727.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 24, 1999.

Eric V. Puchala, Chicago, IL, for plaintiff.

Owen C. Pell and Karen M. Asner, White & Case, New York City, and Robin K. Powers, Rothschild, Barry & Myers, Chicago, IL, and Jeremy D. Margolis, Altheimer & Gray, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Four name plaintiffs—Edward Haven as representative of the Estate of Maksymilian Rechtszafen, Evelyn Ruebner as representative of the Estate of Herbert Prerauer, Allen Welbel and Mark Krug—have brought this putative class action against Rzeczpospolita Polska ("Poland") and Skarb Panstwa, Rzeczpospolita Polska ("State Treasury of Poland") for wrongful seizure and expropriation of real property owned by plaintiffs (or their predecessors) and by other Jewish property owners during and shortly after World War II and for interfering with and preventing the performance of insurance contracts between plaintiffs and such other property owners on the one hand and Warta S.A. ("Warta") and Powszechny Zaklad Ubezpieczen S.A. ("PZU") on the other. Plaintiffs have also sued Warta and PZU for breach of those property and life insurance contracts. Everyone agrees that the four defendants are "foreign states" or "agencies or instrumentalities of foreign states" under the Foreign Sovereign Immunities Act ("Act," 28 U.S.C. §§ 1602–1611): Poland and its Treasury in tautological terms, Warta and PZU because they were owned and operated by the Polish government during all relevant times.

Understandably, defendants' first line of defense against such an effort to remedy wrongs that were initiated more than a half century ago is time-related. In this instance that takes the form of an argument that the statute to which plaintiffs look as their ticket of entry to the federal court, the Act, does not reach back to permit such aged claims. Although numerous other issues raised by defendants are still in the briefing stage, this opinion is limited to resolving that question alone because of the potentially dispositive character of the subject matter jurisdictional question.

Before 1952 foreign sovereigns were entitled to assert absolute immunity from suit in United States courts (see *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 486, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983)). Then the 1952 issuance of the Tate Letter [1] by the State Department restricted that immunity to suits involving the public acts of a foreign sovereign, while eliminating such immunity for commercial acts (see, e.g., *Jackson v. People's Republic of China*, 794 F.2d 1490, 1493 (11th Cir.1986)). Nearly a quarter century later (in 1976) Congress entered the picture with the Act, which both (1) codified and clarified that restrictive theory of sovereign immunity and (2) also granted subject matter jurisdiction to United States courts over suits falling within certain exceptions to sovereign immunity. What must be addressed here is whether, in so doing, Congress conferred such jurisdiction over claims arising before 1952.[2]

---

[1] Reprinted in 26 State Dep't Bull. 984–85 (1982) and in *Alfred Dunhill of London, Inc. v. Cuba*, 425 U.S. 682, 711, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976) (App. 2 to the Court's opinion).

[2] This opinion does not treat with the questions whether any of plaintiffs' claims against one or more defendants might be characterized as post–1952 claims—for example, the post–1952 (indeed, even current) refusal by defendants to honor plaintiffs' demands that what is rightfully theirs should be restored to them—or whether some tolling principle might operate not only to prevent the running of limitations but also to bridge the gap necessary to render plaintiffs' claims post–1952 rather than just post-World War II for jurisdictional purposes. Those murky areas may have to be explored if later developments were to call for such inquiry.

Three Courts of Appeals have weighed in on that issue: first *Jackson*, then *Carl Marks & Co., Inc. v. USSR*, 841 F.2d 26, 27 (2d Cir.1988) (per curiam)[3] and, less than two months ago, *Creighton Ltd. v. Government of the State of Qatar*, 181 F.3d 118 (D.C.Cir.1999). That has produced a 2 to 1 split in favor of a negative answer to the question, although only the most recent (and minority) decision has had the benefit of the Supreme Court's definitive teaching on the subject of retroactivity in *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).[4] To resolve the conflict, it is useful to rehearse the bases for all three decisions.

First among them, *Jackson* was an action against People's Republic of China for the payment of bearer bonds that had been issued by the Imperial Chinese Government in 1911. Attorneys for the United States weighed in on the Chinese government's side, and *Jackson*, 794 F.2d at 1497–98 held:

> We agree that to give the Act retrospective application to pre–1952 events would interfere with antecedent rights of other sovereigns (and also with antecedent principles of law that the United States followed until 1952). It would be manifestly unfair for the United States to modify the immunity afforded a foreign state in 1911 by the enactment of a statute nearly three quarters of a century later.

Next *Carl Marks*, 841 F.2d at 27 (citations omitted) similarly rejected an action against the Soviet Union to recover on debt instruments issued by the Russian Imperial Government in 1916:

Such a retroactive application of the [Act] would affect adversely the USSR's settled expectation, rising "to the level of an antecedent right," of immunity from suit in American courts. We believe, as did the district court, that "[o]nly after 1952 was it reasonable for a foreign sovereign to anticipate being sued in the United States courts on commercial transactions." However, we need not decide the effect of the [Act] on causes of action arising between 1952 and the enactment of the Act.

And so the matter stood for a bit more than a decade, when the District of Columbia Circuit was called upon in *Creighton* to decide a legally equivalent question: not one involving the date of passage of the Act itself, but rather deciding on the effect of a 1988 addition to the Act's immunity exceptions to embrace the enforcement of awards pursuant to arbitration agreements. There the question was whether that 1988 enactment was applicable in a situation where the arbitration agreement (indeed, the actual commencement of arbitration) had antedated that enactment. *Creighton* viewed the amendment (and by parity of reasoning the Act itself) as "speak[ing] not to the primary conduct of the parties" (181 F.3d at 124) but rather as specifying a forum for adjudication of that "primary conduct"—and it did so (*id.* at 124) by quoting this analysis from *Landgraf*, 511 U.S. at 274, 114 S.Ct. 1483 (citations and internal quotation marks omitted):

> We have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred

---

**3.** Anyone who simply heard the name of that case, rather than seeing it in print, would surely be struck by its oxymoronic sound—at least in more recent historical terms: Karl Marx versus the USSR?

**4.** It is worth noting that the issue for resolution here is not one of statutory retroactivity in the usual sense: that is, the question whether a statute does or does not apply to acts preceding its enactment date. In this

instance that type of retroactivity has been confirmed by the courts—instead the question is rather how far back the retroactivity stretches (see 14A Charles Alan Wright et al., *Federal Practice and Procedure: Jurisdiction 3d* § 3662, at 170–71 (3d ed.1998), referring to the case law before the *Creighton* decision ("The Act has been held to apply retroactively, but only to 1952, the year in which the United States adopted the restrictive-immunity approach")).

or when the suit was filed.... Application of a new jurisdictional rule usually takes away no substantive right but simply changes the tribunal that is to hear the case. Present law normally governs in such situations because jurisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties.

*Creighton, id.* continued with its own analysis and holding that could equally well have been written for this case:

So it is in this case, for § 1605(a)(6) does not affect the contractual right of the parties to arbitration but only the tribunal that may hear a dispute concerning the enforcement of an arbitral award. See *McGee v. International Life Ins. Co.*, 355 U.S. 220, 224, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (holding long-arm statute enacted after parties entered into contract "did nothing more than to provide petitioner with a California forum to enforce whatever substantive rights she might have against respondent"). Under established principles, therefore, application of § 1605(a)(6) is not retroactive, let alone impermissibly retroactive, and Qatar does not claim that a different result should obtain simply because a foreign state is affected by the change in a jurisdictional statute. See *Princz* [*v. Federal Republic of Germany* ], 26 F.3d [1166,] 1171 [ (D.C.Cir. 1994) ] (postulating, though not deciding, that application of 1976 version of FSIA to acts committed before 1952 would not be retroactive because it "would not alter Germany's liability under the applicable substantive law in force at the time, i.e. it would just remove the bar of sovereign immunity to the plaintiff's vindicating his rights under that law"). Accordingly, we hold that the district court has subject matter jurisdiction over this case pursuant to the arbitration exception in § 1605(a)(6).

In fact, *Jackson*, 794 F.2d at 1497–98 had itself expressly treated the Act as applicable to conduct that antedated its 1976 enactment (*Carl Marks*, 841 F.2d at 27 had reserved judgment on that question).

So for at least two of the three courts that have spoken to the issues, the question is not whether the Act should be treated as retroactive in *Landgraf*'s jurisdictional sense—that is, whether the Act applies to conduct that predated its grant of subject matter jurisdiction (a question answered in the affirmative by those two courts, and on which the third court did not view itself as compelled to rule). Instead the question is rather how far back the conduct susceptible to relief should go once such jurisdiction has been conferred. Although that latter question is close, this Court finds the District of Columbia view—articulated as it has been in two post-*Landgraf* decisions (*Princz*, 26 F.3d at 1170–71 and *Creighton* ), and having commanded the adherence of five judges of that court—to be more persuasive.

### Conclusion

Accordingly this Court denies defendants' motion to dismiss for lack of subject matter jurisdiction (viewed solely as a question of the Act's having conferred such jurisdiction). It remains to be determined, of course, whether plaintiffs fit within any of the exceptions to sovereign immunity specified in the Act (one of the subjects now being briefed by the parties). Nor should this opinion be misunderstood as speaking to any of the other potential roadblocks to plaintiffs' recovery.